**Carroll COBB, Appellant,**

v.

**TEXAS DISTRIBUTORS, INC., Appellee.**

No. 18586.

Court of Civil Appeals of Texas, Dallas.

May 8, 1975.

Crenshaw, Dupree & Milan, Cecil C. Kuhne, Lubbock, for appellant.

Matthews & Matthews, Jay J. Madrid, Dallas, for appellee.

GUITTARD, Justice.

Texas Distributors, Inc. sued Carroll Cobb on his guaranty of the debts of Western United Homes, a corporation. The trial court, sitting without a jury, rendered judgment for plaintiff for the amount of the debt and for an attorney's fee, and the defendant guarantor appeals. We hold (1) that the document is a general guaranty for the benefit of creditors rather than a special guaranty for the sole benefit of a credit-rating agency; (2) that the evidence shows reliance by plaintiff on the guaranty; (3) that extension of credit in reliance on the guaranty was a sufficient acceptance by plaintiff, without formal notice of acceptance; and (4) that the defendant guarantor cannot complain here of recovery of an attorney's fee, since he did not object to such recovery in the trial court. Accordingly, we affirm the judgment.

## 1. *Scope of the Guaranty*

■ The defendant guarantor contends that the guaranty in question is a special guaranty for the sole benefit of Dun & Bradstreet, Inc., a credit-rating agency. This contention is not supported by the language of the document, which is as follows:

FORM FOR AN INDIVIDUAL GUARANTEEING THE DEBTS OF A CORPORATION

WHEREAS, the undersigned Carroll Cobb is a stockholder of Western United Homes and through ownership of capital stock of the said Corporation, has an important interest in the profits of the latter; and WHEREAS for the convenient and successful conduct of the business of the said Corporation it is necessary that it should receive credit in respect to its contracts;

NOW, THEREFORE, I, the undersigned, do agree that I shall—until due, written notice to the contrary be served upon Dun & Bradstreet, Inc., and existing creditors of the aforesaid Corporation—be and continue liable for the discharge of all contract obligations of the aforesaid Corporation. And it is further agreed by the undersigned that Dun & Bradstreet Inc., may rely upon this guarantee in basing credit ratings of the aforesaid Corporation, and may, in their discretion, furnish their subscribers with copies, or the substance of the foregoing.

We construe this document as a general guaranty of the debts of the corporation. The operative language is: "I, the undersigned, do agree that I shall . . . be and continue liable for the discharge of all contract obligations of the aforesaid Corporation." The only limitation on this language is the provision for termination: "until due, written notice to the contrary be served upon Dun & Bradstreet Inc., and existing creditors of the aforesaid Corporation." This provision for notice to creditors as well as to Dun & Bradstreet is a further indication that the guaranty is not for the benefit of Dun & Bradstreet alone.

█ No limitation on the scope of the guaranty is implied by the further provision: "and it is further agreed by the undersigned that Dun & Bradstreet, Inc., may rely upon this guarantee in basing credit ratings of the aforesaid Corporation, and may, in their discretion, furnish their subscribers with copies, or the substance of the foregoing." This provision indicates that the guaranty was furnished to induce Dun & Bradstreet to give the corporation a favorable credit rating. Dun & Bradstreet, however, could not base a favorable credit rating on the guaranty if the only effect of the guaranty was to assure payment of the debts of the corporation to Dun & Bradstreet. Dun & Bradstreet is in the business of giving credit ratings to prospective creditors, and it could not have relied on the guaranty in making the credit rating of the corporation unless the guaranty was made for the benefit of the creditors who might rely on the rating. Dun & Bradstreet had no dealings with the corporation that would put it in the position of a creditor, so far as this record shows. If the guaranty were construed to be for the benefit of Dun & Bradstreet alone, it would be meaningless. Consequently, we construe it as a general guaranty for the benefit of all creditors of the corporation.

## 2. Reliance on Guaranty

█ The defendant guarantor contends that the evidence fails to show that plaintiff relied on the guaranty in extending credit to the corporation for the goods listed in the account sued on. Defendant points out that the guaranty was signed May 14, 1971, but that in April 1971, plaintiff began selling merchandise to the corporation on the basis of a ten-thousand-dollar line of credit. Defendant argues further that plaintiff could not have relied on the guaranty because plaintiff did not know about the guaranty until early in 1972, and plaintiff's credit manager admitted that plaintiff did not rely on the guaranty until May or June 1972. We hold that the evidence is sufficient to support the trial court's implied finding that the goods delivered after June 1972, were sold in reliance on the guaranty. According to the testimony of plaintiff's credit manager, plaintiff made the decision in May or June of 1972 to continue to sell to the corporation on credit because of this guaranty. The account sued on shows that the total charges for merchandise sold after June 1972, amounted to $10,153.20. After allowing credits for defendant's payments, the balance originally sued for was $8,081.52, and an amended petition allowing a further credit alleged the remaining balance to be $4,040.76.

█ Defendant contends that the account was not admissible in evidence be-

cause it did not show the complete dealings between the parties and, therefore, did not show that the final amount owed by the corporation was greater than the balance owed at the time plaintiff began relying on the guaranty. Defendant's theory is that unless the amount of the outstanding balance was increased after plaintiff began relying on the guaranty, plaintiff sustained no damage in reliance on the guaranty.

This theory assumes that plaintiff would have continued to sell merchandise to the corporation on credit without any guaranty, so long as the outstanding balance did not increase. The trial court was at liberty to reject this assumption. Plaintiff was never bound to sell merchandise to the corporation on credit. After June 1972, when, according to the credit manager, plaintiff began to rely on the guaranty, plaintiff could have refused to sell any more merchandise until it had been paid for all merchandise previously sold. It did not do so, but made the decision to continue to sell merchandise to the corporation on credit in reliance on the guaranty. The amount of merchandise sold after June 1972, was substantially in excess of the amount sued for. Consequently, the transactions that occurred before plaintiff began relying on the guaranty are immaterial to this suit. Accordingly, we hold that the account was properly admitted and that this account, together with the testimony of plaintiff's credit manager, is sufficient to support the trial court's implied finding that all merchandise sold to the corporation after June 1972, was sold in reliance on the guaranty, regardless of whether the balance of indebtedness was increased or reduced after that time.

### 3. *Acceptance of Guaranty*

■ Defendant guarantor contends that the guaranty never became a binding contract because plaintiff failed to give notice to him that it accepted the guaranty or that it would rely on it. We conclude that in the case of an unconditional guaranty, such as

that now before us, which does not by its terms require notice of acceptance, no such notice is necessary. Sale of goods on credit in reliance on the guaranty is in itself sufficient acceptance. American Surety Co. v. Whitehead, 45 S.W.2d 958, 961 (Tex. Comm'n App.1932, holdings approved); Tilt-Kenney Shoe Co. v. Haggarty, 43 Tex. Civ.App. 335, 114 S.W. 386 (1906, no writ); 1 Corbin on Contracts § 68 (1963), and *see* Eastman Oil Well Survey Co. v. Hamil, 416 S.W.2d 597, 604 (Tex.Civ.App.—Houston 1967, writ ref'd n. r. e.).

■ The cases cited by defendant in support of his contention that notice of acceptance is required involved guaranties that were construed to be conditioned on something other than extension of credit. Wilkins v. Carter, 84 Tex. 438, 19 S.W. 997 (1892); Mayfield v. Wheeler, Geiger & Co., 37 Tex. 256 (1873). Even if some kind of notice to the guarantor is regarded as a condition of liability, as distinguished from a requisite of a valid contract (*see* 1 *Corbin, supra,* § 69), the guarantor here is not in a position to assert that plaintiff was required to notify him that it was relying on the guaranty in continuing to sell to the corporation on credit, since defendant, as an officer of the corporation, presumably had access to information concerning the corporation's purchases from plaintiff.

■ Finally, defendant guarantor contends that in awarding an attorney's fee against him, the trial court erred because the guaranty contract made no provision for an attorney's fee. We overrule this contention because defendant does not show that he made any objection to the award of an attorney's fee in the trial court. So far as appears, he did not except to the claim for attorney's fee in the petition, nor did he object to the inclusion of the fee in the judgment. His motion for new trial contains no complaint on this point. Although formal exceptions are not necessary under Rules of Civil Procedure, rule 373, that rule requires that the complaining party make

known to the trial court his objection and his grounds therefor, unless he had no opportunity to object. Otherwise, he cannot raise the objection for the first time on appeal. Lewis v. Texas Employers' Insurance Ass'n, 151 Tex. 95, 246 S.W.2d 599, 600 (1952); Whatley v. Whatley, 493 S.W.2d 299, 304 (Tex.Civ.App.—Dallas 1973, no writ).

All other points of error raised by defendant have been considered and are overruled.

Affirmed.