C. R. ALSUP, Appellant,

v.

MERCANTILE NATIONAL BANK, Appellee.

No. 1456.

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 15, 1979.

Fisher Alsup, Alsup & Alsup, Corpus Christi, for appellant.

Robert D. Kilpatrick, Wood & Burney, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit brought by the appellee Mercantile National Bank against C. R. Alsup, Stan Howald, Joseph Zavaletta, and Gus Zavaletta to recover monies paid out of an account at the bank called Valley Capital Company. The trial was to the court without a jury which entered a default judgment against Howald, a take-nothing judgment against defendants Joseph Zavaletta and Gus Zavaletta, and entered judgment in favor of the bank against Alsup and Howald jointly and severally for $4,104.76, together with attorney fees of $1,368.25. Only Alsup complains of the trial court judgment on appeal.

On December 5, 1977, a checking account was opened at the Mercantile National Bank in the name of Valley Capital Company. At the time the account was opened, Howald and Alsup were present. The bank accepted an initial deposit of $1,000.00, and had Mr. Howald and Mr. Alsup sign a signature card which authorized checks signed by them to be drawn on the new account. Howald gave the bank officer an assumed name certificate which stated that the Valley Capital business was being operated as a general partnership and that the owners of such business were Howald, Alsup, and Joseph and Gus Zavaletta.

The evidence shows that Howald and Alsup opened an office in Corpus Christi conducting a business called Valley Capital. Alsup was in charge of running of the office portion of the business. During the course of the first month's operation, approximately $10,000.00 had been deposited to the account and a number of checks had been written by Howald and Alsup against the account. As it turned out, some of the checks deposited to the account at the bank were returned marked, "Insufficient Funds." This caused an overdraft at the bank in the amount of $4,460.09. The actual overdraft was created by nine checks written on the account and paid by the bank, eight of which were drawn by Alsup. Alsup's checks totalled $4,104.76, the amount sued for by the bank.

During the course of the trial, Joseph and Gus Zavaletta denied that they were connected with the business in any way and denied that they had signed the assumed name affidavit or that they had any knowledge of its existence. The evidence that was further developed showed that Stan Howald was a "con artist," and had left the country sometime after being served with citation in this suit and was nowhere to be found.

Alsup contends on appeal that he is not liable for the checks he wrote because they were written on the account of Valley Capital to pay the bills of said company, that he made no representations to the bank that he was the owner of the account, or representations that he would guarantee or be responsible to the bank for any checks written against the account. Alsup argues that he had no control of the books, made no deposits to the account, and only knew the amount of the bank balance from information received from Howald. He emphasized that he was never the owner of the account and should not be held liable to the bank as such, as a matter of law.

The record shows that two of the eight checks that were drawn by Alsup, named Alsup as payee. These two checks were paid by the bank and ultimately created part of the overdraft. Alsup admitted that he signed and executed the assumed name certificate along with Howald. This certificate states on the instrument that the parties thereto had acknowledged the execution of the same before a notary public; were to conduct a business "indefinitely"; were to operate as a "general partnership"; and were the "owners" of the business. The certificate was filed of record in Cameron County, Texas. Alsup also admitted that he executed the signature card in front of the bank's officer; was present when the assumed name certificate was given to the bank at the time the account was opened; but denied that he had any knowledge that Howald gave the certificate to the bank.

Alsup, as the drawer of the checks, ordered the Mercantile National Bank, as drawee, to pay the sums of money set forth on the checks to third-party payees. By drawing and issuing the checks, Alsup has, in effect, promised the bank that he, as an individual, would reimburse the bank in the event the checks were paid and an overdraft resulted. This is so because Alsup executed the checks in his individual name and not in some representative capacity. Section 3.403 of the Texas Business and Commerce Code provides in part as follows:

"An authorized representative who signs his own name to an instrument

(1) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;"

The Supreme Court, in addressing this section of the Business and Commerce Code, stated: "[A]ny person who signs a draft engages that, upon dishonor, he will pay the amount thereof to the holder." *Griffin v. Ellinger*, 538 S.W.2d 97 (Tex.Sup.1976). Alsup made no attempt to advise the various payees, or the bank in this case, that he was only executing the checks in a representative capacity. The burden was on him, in order to discharge any personal liability, to disclose his agency or other representative capacity of the company. This he did not do.

In addition, Alsup is liable to the bank for still another reason. He executed the assumed name affidavit before a notary and permitted it to be placed in circulation, representing to all who had actual or constructive notice (of the information on the certificate) that he was a partner of Howald and an owner of the business. There was no dispute that the bank was authorized to accept checks written by Alsup by virtue of his personal signature which appeared on the company "account card" which he left with the bank. He has no standing in court to complain that he was neither the owner of the bank account nor liable to the bank for the creation of the overdraft. Even though he did not make any actual verbal representations to the bank at the time they opened the account, his silence amounted to an acquiescence of what took place. The Texas Uniform Partnership Act, article 6132b § 16(1) states as follows:

§ 16. Partner by Estoppel

"Sec. 16. (1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made . . ."

If, after executing the partnership affidavit (assumed name certificate) and permitting it to leave his hands, he wanted to limit his liability, he had not only the statutory, but a common law duty to speak out. Compare *Cox Enterprises, Inc. v. Filip*, 538 S.W.2d 836 (Tex.Civ.App.—Austin 1976, no writ).

Appellant's remaining two points of error concern the trial court's award of attorney fees. The plaintiff bank plead for judgment in the amount of the overdraft plus reasonable attorney fees of $1,486.70. During the course of the trial, the bank introduced evidence as to the reasonableness of the attorney fees in question. No exception to the bank's pleadings were made by Alsup, and no objections were leveled at the introduction of the evidence concerning the attorney fees. After judgment was entered, the appellant filed a motion for a new trial, but made no mention of the trial court's judgment in awarding attorney fees to the bank. Now for the first time, Alsup complains to this Court that the plaintiff bank is not entitled to attorney fees.

Rule 324 requires an appellant to make some complaint of a trial court's ruling in order to apprise the trial court of its erroneous action or ruling and allow the court to reconsider the propriety of its ruling. If such complaint is not made during the course of the trial, it is necessary to make such complaint known in a motion for new trial where such complaint has not otherwise been ruled upon. If this is not done, the error, if any, is waived. *Cobb v. Texas Distributors, Inc.*, 524 S.W.2d 342 (Tex.Civ.App.—Dallas 1975, no writ); *Lewis v. Texas Employers' Insurance Ass'n*, 151 Tex. 95, 246 S.W.2d 599 (1952). Appellant's points of error are overruled.

The judgment of the trial court is AFFIRMED.