**W.R. ASHCRAFT, Appellant,**

v.

**Donald E. LOOKADOO, Appellee.**

**No. 05–95–01211–CV.**

Court of Appeals of Texas,
Dallas.

Aug. 28, 1997.

Gary Pridavka, Spencer and Pridavka, P.C., Dallas, for appellant.

Gregory A. Whittmore, Dallas, for appellee.

## OPINION

HANKINSON, Justice.

W.R. Ashcraft purchased a note deficiency from the Resolution Trust Company. The principal issue presented here is whether, when Ashcraft purchased that deficiency, he also acquired Donald E. *Lookadoo's* guaranty, which secured the original note, so that he became the guaranty's owner and could enforce it against Lookadoo. According to the contract governing this transaction, the

RTC agreed to transfer to Ashcraft only the note deficiency and any supporting documents located in the asset file. Ashcraft concedes that the asset file he received from the RTC did not contain Lookadoo's guaranty and that the RTC never expressly assigned that guaranty to him. But he argues that, after a nonjury trial, the trial court erroneously concluded from these facts that the RTC did not transfer the Lookadoo guaranty to him and that he does not own it. Instead, Ashcraft asks us to assume that when the RTC assigned him the underlying note deficiency, it also impliedly assigned him Lookadoo's guaranty. After reviewing the parties' contract, we conclude that the RTC did not assign the guaranty to Ashcraft. After reviewing the evidence, we further conclude that Ashcraft did not prove the RTC even held the guaranty and was therefore capable of assigning it to Ashcraft. Consequently, Ashcraft failed to prove that he was the owner and holder of the guaranty. We therefore affirm the trial court's judgment.

## BACKGROUND

In 1984, United Savings Joint Venture executed a promissory note for $1,500,000, payable to Metropolitan Savings & Loan Association. Real property located in downtown Fort Worth partially secured the note. Although the note recites that Preston M. Carter, Jr., Douglas H. Kincaid, and Lookadoo executed personal guaranties securing the note, it does not recite the guaranties' terms. In 1985, the parties consensually modified and extended the note.

In 1990, after placing Metropolitan in receivership, the RTC declared the note to be in default, appointed a substitute trustee, and posted the property for foreclosure sale. The substitute trustee foreclosed on the property and sold it for $397,100. After crediting the foreclosure proceeds to the sum due on the note at default, $1,048,922.39 remained due.

Later, in 1992, Ashcraft successfully bid on the note deficiency at an RTC auction. Before the auction, Ashcraft, in his own words, did "due diligence" and reviewed the RTC asset file pertaining to the note deficiency. Although Ashcraft could not recall in detail the loan file's contents, at trial he stated with certainty that it did not include a copy of Lookadoo's guaranty. After examining the asset file and note (which referenced Lookadoo's guaranty), Ashcraft neither asked about any guaranties nor requested a copy of them from the RTC. Instead, without ever discussing with the RTC whether any guaranties existed, he submitted the winning bid and signed a document entitled Purchase and Sale Agreement.

The Purchase and Sale Agreement governed the parties' transaction. Under the agreement's terms, Ashcraft received only the assets described in the asset schedule. Later, the RTC issued Ashcraft a Bill of Sale that listed the asset Ashcraft purchased as a commercial deficiency on the note and forwarded the asset file to him. This file contained the loan agreement, the note (attached as an exhibit to a lost note affidavit), the deed of trust, and the modification. The loan file contained neither the original nor a copy of Lookadoo's guaranty.

Ashcraft turned the loan file over to his attorney for collection. Although he did not physically possess any guaranties, Ashcraft sued Carter, Kincaid, and Lookadoo, as guarantors of the note, for the deficiency. Because bankruptcy proceedings discharged Kincaid's and Carter's debts, Ashcraft nonsuited them. Thus, at trial Ashcraft sought only to collect on Lookadoo's guaranty. After a bench trial, the court entered a take-nothing judgment in Lookadoo's favor, issued findings of fact and conclusions of law, and determined that because Ashcraft was not the owner of the guaranty he could not enforce it. This appeal followed.

In fifteen points of error, Ashcraft challenges certain findings of facts [1] and conclu-

---

1. Ashcraft challenges the following fact findings:

4. According to its terms, the lender could look only to the guaranties and the Property secured by the Deed of Trust to satisfy the indebtedness.

10. In the Fall of 1992, W.R. Ashcraft participated in an auction held by the RTC and was the successful bidder for the Note.

13. Under the terms of the Purchase and Sale Agreement, Ashcraft had the obligation to provide separate written assignments for any judg-

sions of law[2] in which the trial court determined that under the terms of the sale, the RTC had not expressly or impliedly assigned the guaranty to Ashcraft; therefore, he was not the owner of the guaranty and could not enforce it. Although he does not specifically challenge the evidence supporting the trial court's fact findings, we assume that is his intent. We will discuss together the points of error necessary to our final disposition of this appeal.

When reviewing the trial court's findings of fact and conclusions of law, the fact findings have the same force and dignity as a jury's verdict on special issues.[3] We apply the same standards in reviewing the legal or factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a special issue.[4] And, we may not substitute our judgment for the fact finder's, even though, after reviewing the evidence, we would reach a different conclusion.[5] This is so because the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony.[6] In contrast, when reviewing the trial court's legal conclusions, we evaluate them independently and thus review the legal conclusions drawn from the facts found solely to determine their correctness.[7] Keeping these standards in mind, we now examine the evidence that supports the trial court's fact findings and the validity of its legal conclusions.

> ments, collateral, or other interests in any of the Assets sold under the Purchase and Sale Agreement.
>
> 17. Ashcraft did not receive the original or a copy of the guaranties of Messrs. Carter, Kincaid, or Lookadoo from the RTC.
>
> 26. Lookadoo had little memory of the events regarding the loan or the transactions involving the loan. He did not remember executing the Loan Agreement, the Note, the Deed of Trust and the Modification in the capacity of partner of the general partnership which served as venture manager or executing a guaranty or the Modification in an individual capacity. He could not identify the signatures on the Loan Agreement, the Note, the Deed of Trust, the Modification or the Guaranty as his because he did not remember signing the documents and because his signature has changed in the intervening ten years.
>
> 32. The Court finds that the evidence presented does not establish that Ashcraft received the Guaranty as a part of the sale and transfer of the Note, or by a separate assignment or an express assignment.
>
> 33. The Court finds that the language in the Purchase and Sale Agreement will not support an implied assignment of the Guaranty with the Note.

2. Ashcraft challenges the following conclusions of law:

> 4. Absent an express provision, a guaranty is not transferable to the buyer of a note since the buyer is not a party to the original guaranty contract.
>
> 5. The evidence presented at trial does not establish that Ashcraft received the Guaranty as part of the sale and transfer of the Note.
>
> a. The RTC sold what was in the Asset File.
>
> b. The Guaranty was not among the documents that Ashcraft received from the RTC after the sale.
>
> c. No separate assignment of the Guaranty was given to Ashcraft by the RTC.
>
> d. No express assignment of the Guaranty was given to Ashcraft by the RTC.
>
> e. Ashcraft does not have the Guaranty.
>
> 6. The language of the Purchase and Sale Agreement will not support an implied assignment of the Guaranty with the Note.
>
> 7. Although not expressly stated, the language of the Guaranty implies that it does not automatically follow the Note to which it applies.
>
> 8. Ashcraft failed to prove an essential element of his cause of action; that he is the owner and holder of the Lookadoo Guaranty.

3. *FDIC v. F & A Equip. Leasing,* 854 S.W.2d 681, 684 (Tex.App.—Dallas 1993, no writ); *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 10 (Tex. App.—Dallas 1988, writ denied).

4. *Baker v. Baker,* 719 S.W.2d 672, 674–75 (Tex. App.—Fort Worth 1986, no writ); *see Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (describing standard for factual sufficiency review); *FDIC,* 854 S.W.2d at 685 (describing standard for legal sufficiency review).

5. *FDIC,* 854 S.W.2d at 684–85; *Essex Crane Rental Corp. v. Striland Constr. Co.,* 753 S.W.2d 751, 755–56 (Tex.App.—Dallas 1988, writ denied).

6. *FDIC,* 854 S.W.2d at 684; *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

7. *Dallas Morning News v. Board of Trustees,* 861 S.W.2d 532, 536 (Tex.App.—Dallas 1993, writ denied); *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds by Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 894 (Tex.1991).

## DISCUSSION

The determinative issue raised here is whether Ashcraft owns the guaranty and thus can enforce it. At trial, and on appeal, the parties take diametrically opposed positions. Lookadoo contends that to answer this question we can look only to the terms of the Purchase and Sale Agreement that governs this transaction. Because the agreement contains express provisions describing the asset purchased from the RTC that do not mention Lookadoo's guaranty, Lookadoo argues that we cannot imply that the RTC assigned the guaranty. In contrast, Ashcraft argues that we need neither consider nor be constrained by the terms of the parties' agreement. Ashcraft contends that the sale terms are irrelevant and would have us sweepingly pronounce that the assignment of a note automatically operates as an assignment of any separate guaranties that secure the note regardless of whether either party knew about, or possessed, the guaranty.

No Texas court has addressed or accepted Ashcraft's argument, and the court below refused to accept it. The trial court, adopting Lookadoo's approach, confined its inquiry to the terms of the transaction between the RTC and Ashcraft and concluded that based on the agreement's terms, the RTC did not assign the guaranty to Ashcraft, Ashcraft did not receive the guaranty, and he therefore failed to prove that he was the owner and holder of the guaranty. Based on our review of the evidence presented to the trial court, we conclude that the trial court properly interpreted the terms of the sale and the evidence before it to foreclose any implied assignment of the guaranty.

■ On appeal, Ashcraft claims that "[t]he RTC sold [him] the right to collect the deficiency amount remaining on the note" and

that the deficiency is "only collectible through enforcement of the guaranties." Accordingly, Ashcraft urges us to imply that the RTC also assigned the Lookadoo guaranty to ensure that the deficiency he purchased is not rendered valueless. But the parties here made their own contract, and we lack the power to vary those terms to protect one of them from the unforeseen consequences of their agreement.[8]

■ Further, "implied provisions in agreements are not favored by the law."[9] We permit them only when the parties so clearly contemplated the implied provision that they deemed expressing it unnecessary or when inferring a provision is necessary to effectuate the agreement's full purpose as gathered from the written instrument.[10] But "it is not enough that an implied provision is necessary to make an agreement fair or that without such provision the agreement would be improvident, unwise, or unjust; the implied provision must arise from the presumed intent of the parties as gathered from the instrument as a whole."[11] And we cannot imply "terms in opposition to the express language that the parties themselves have written into the contracts."[12]

■ In this case, the terms of the contract at issue (the Purchase and Sale Agreement) define what the RTC sold to Ashcraft. Initially, in the recitals, the RTC states it "is the owner of certain Assets, as defined below, and wishes to sell such Assets." The agreement then defines "assets" as "any Charge Off, Deficiency or Judgment described on the Asset Schedule or the Final Asset Schedule" and includes any related escrow accounts. In section 2.1, the RTC agreed to sell and Ashcraft agreed to buy "the Assets described in the Asset Schedule."

---

**8.** *See Provident Fire Ins. Co. v. Ashy,* 139 Tex. 334, 339–40, 162 S.W.2d 684, 687 (1942).

**9.** *Thornton v. D.F.W. Christian Television, Inc.,* 925 S.W.2d 17, 24 (Tex.App.—Dallas 1995) (citing *Sumrall v. Russell,* 255 S.W. 239, 240 (Tex. Civ.App.—El Paso 1923, writ dism'd w.o.j.)), *rev'd on other grounds,* 933 S.W.2d 488 (Tex. 1996).

**10.** *Id.* (citing *Danciger Oil & Ref. Co. v. Powell,* 137 Tex. 484, 490, 154 S.W.2d 632, 635 (1941)).

**11.** *Id.; see El Paso County Sheriff's Deputies' Ass'n v. Samaniego,* 802 S.W.2d 727, 729 (Tex. App.—El Paso 1990, writ denied) ("Courts cannot by implication import something into a written instrument merely because it might seem that the agreement may appear to operate unjustly.").

**12.** *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989); *Exxon Corp. v. Atlantic Richfield Co.,* 678 S.W.2d 944, 947 (Tex.1984).

Later, in section 2.3, the agreement states that "[o]nly the Assets described in the Final Asset Schedule shall be conveyed to the Buyer and the Asset Purchase Price shall be calculated only with respect to such assets." According to section 2.2 of the agreement, the Final Asset Schedule would be attached to a Bill of Sale, which was to be delivered on the transfer date. The Bill of Sale introduced at trial contained an exhibit entitled "Detail Asset Listing for Pool" and subtitled "Commercial Deficiencies." One asset listed on this exhibit is the $1,048,922.39 deficiency for this note. The exhibit does not mention any guaranties.

Mark Isensee supervised this asset sale for the RTC. He testified that when a buyer purchases assets from the RTC as Ashcraft did, the buyer purchases only those items found in the asset file because the RTC sells the asset files "as is." The agreement defines the asset file's contents as, "to the extent they are within Seller's possession: the note (or a lost note affidavit), the security agreement, if any; and to the extent provided by the Buyer in accordance with another section of the agreement, an assignment to the order of Buyer of any security agreement." According to Ashcraft himself, the asset file did not contain the guaranty.

What is more, Ashcraft failed to show that the RTC even possessed Lookadoo's guaranty at the time of the auction. Ashcraft never asked the RTC about the guaranty before the auction. If Ashcraft had determined that the RTC had the guaranty, but that it simply was not included in the asset file, section 3.01 of the agreement contractually obligated him to obtain an assignment from the RTC:

*Buyer's Preparation of Assignments.* Upon execution of this Agreement, it shall be the Buyer's responsibility to prepare the assignments of judgment for any and all judgments sold hereunder.... In the event any other assignments of Seller's interest in any of the Assets and any collateral securing the Assets is required, it shall be Buyer's responsibility to prepare and submit the form of the assignment it desires to use to the Seller....

Ashcraft did not fulfill this obligation.

Based on the agreement's terms, therefore, we conclude that the agreement specifically defined the asset assigned to Ashcraft— the note deficiency. That definition did not include the guaranty. Moreover, Ashcraft agreed that if he wanted anything else assigned from the RTC, he would provide the assignment for the RTC's approval. In the face of these contractual terms, implying that the RTC assigned Ashcraft Lookadoo's guaranty would contradict the parties' express contractual agreements and would thus be improper.[13]

Not only does Ashcraft ask us to ignore these terms of the Purchase and Sale Agreement to decide that the RTC assigned the Lookadoo guaranty to him, he urges that the terms of the agreement are irrelevant. Ashcraft would have us adopt and apply a broad legal principle pronouncing that in all cases the transfer of the underlying note automatically assigns any guaranties without the need of a separate written assignment regardless of whether the parties knew about, or possessed, the guaranty. To support his argument, Ashcraft relies on other states' law;[14] quotations from secondary sources;[15] and factually distinguishable Texas case law.[16]

13. See *Exxon,* 678 S.W.2d at 947.

14. See *Ampex Credit Corp. v. Bateman,* 554 F.2d 750, 753 (5th Cir.1977) (applying Georgia law); *Thorpe v. Story,* 10 Cal.2d 104, 73 P.2d 1194, 1202 (1937); *Hazel v. Tharpe & Brooks, Inc.,* 159 Ga.App. 415, 283 S.E.2d 653, 654 (1981); *Sinclair Mktg., Inc. v. Siepert,* 107 Idaho 1000, 695 P.2d 385, 388 (1985).

15. See 38 AM.JUR 2D *Guaranty* § 36 (1968); 6 AM JUR.2D *Assignments* § 121 (1963); 11 AM.JUR.2D *Bills and Notes* § 379 (1963); 8 TEX. JUR.3D *Suretyship and Guaranty* § 184 (1994).

16. See, e.g., *McAllen State Bank v. Texas Bank & Trust Co.,* 433 S.W.2d 167 (Tex.1968); *East Tex. Fire Ins. Co. v. Coffee,* 61 Tex. 287 (1884); *Lawson v. Gibbs,* 591 S.W.2d 292 (Tex.Civ.App.— Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Pridgen v. Denson,* 220 S.W.2d 194 (Tex.Civ. App.—Austin 1949, writ dism'd); *Howard v. Stahl,* 211 S.W. 826 (Tex.Civ.App.—Amarillo 1919, no writ); *Intertype Corp. v. Sentinel Publishing Co.,* 206 S.W. 548 (Tex.Civ.App.—San Antonio 1918, no writ); *T.W. Marse & Co. v. Flockinger,* 189 S.W. 1017 (Tex.Civ.App.—Austin 1916, no writ).

Faced with this case's facts, these authorities are not compelling.

Nevertheless, while we cannot categorically conclude that under no circumstances would we find Ashcraft's cited authority persuasive, Ashcraft's cited authority does not persuade us to ignore the language in the Purchase and Sale Agreement in favor of implying the guaranty's assignment. But, even if Ashcraft had convinced us to abandon the Purchase and Sale Agreement's terms in favor of implying the assignment to Ashcraft, we would not do so here because Ashcraft failed to show that the RTC owned the guaranty and thus that it could have been impliedly assigned.

■■■ A guaranty is a separate contract distinct from the primary obligation.[17] Guaranties can therefore be modified or released like any other contractual agreement without affecting the original obligation. Consequently, that the note here continued in effect over the years' course does not prove that Lookadoo's guaranty remained in effect as well. And Ashcraft presented no evidence that the guaranty still existed, or that the RTC owned it, when the RTC sold the note deficiency to Ashcraft.[18] He could not produce the original guaranty. Nor could he produce a copy of the guaranty that he received from the RTC at the time he purchased the note deficiency because he did not receive one then.

In fact, Ashcraft's attorney only obtained a copy of the guaranty less than two weeks before trial. At that time, Jackson & Walker, L.L.P. (Metropolitan's attorneys on the original loan transaction) produced a copy of a guaranty in Lookadoo's name. Jackson & Walker copied the guaranty from a duplicate closing binder of the original 1984 loan transaction. But no witness from Jackson & Walker, or any other witness with personal knowledge of the original loan transaction, authenticated this copy of the guaranty. Instead, Ashcraft's attorney informed the court that he went to Jackson & Walker's office and copied this guaranty from what Jackson & Walker represented to be the closing file for the original 1984 loan. Although Lookadoo objected at trial to admitting this copy because Ashcraft failed to authenticate it properly, the trial court admitted it. On appeal, Lookadoo does not challenge the trial court's decision to admit this copy into evidence.

■■■ Ashcraft claims that by obtaining this copy of the guaranty from "the RTC's lawyers," Jackson & Walker, he established that the RTC owned the guaranty when he purchased the note deficiency. Ashcraft points out that Jackson & Walker represented Metropolitan in 1984 when the original loan closed. He then correctly notes that six years later the RTC became Metropolitan's receiver. From these two facts he summarily concludes that Jackson & Walker was also the RTC's counsel. We disagree. Ashcraft never showed that an attorney/client relationship existed between the RTC and Jackson & Walker. In fact, Ashcraft never established that at the time the RTC became Metropolitan's receiver, Jackson & Walker still represented Metropolitan. Given these facts, we cannot attribute Jackson & Walker's actions to the RTC to establish that the RTC owned the guaranty in 1992 when Ashcraft purchased the note deficiency.

■■■ Furthermore, this copy of Lookadoo's guaranty by itself does not prove the guaranty was still valid and owned by the RTC when the RTC sold the note deficiency to Ashcraft. At best, this copy shows the guaranty's terms as of 1984. But the RTC did not become Metropolitan's receiver until 1990—six years later. And Ashcraft did not buy the deficiency until 1992—two years after the RTC became Metropolitan's receiver. Ashcraft presented no evidence about the guaranty during the interim period from its execution in 1984 until 1992 when he purchased the note deficiency. We conclude from this evidence that Ashcraft never proved that the RTC was the holder and

---

**17.** *See Sunbelt Sav., FSB v. Barr,* 824 S.W.2d 600, 602 (Tex.App.—Dallas 1991) (citing *Fourticq v. Fireman's Fund Ins. Co.,* 679 S.W.2d 562, 564 (Tex.App.—Dallas 1984, no writ)), *rev'd on other grounds,* 837 S.W.2d 627 (Tex.1992).

**18.** *See Wiman v. Tomaszewicz,* 877 S.W.2d 1, 8 (Tex.App.—Dallas 1994, no writ) (plaintiff must prove he is owner of guaranty to recover).

owner of the guaranty at the time it assigned the note to Ashcraft.[19] He therefore did not establish that the RTC had the right to assign the guaranty, either expressly or impliedly.

We overrule appellant's points of error one through three, five through eight, ten, and twelve through fourteen. Due to our disposition of these points of error, we need not reach appellant's remaining points of error.[20] We affirm the trial court's judgment.

THOMAS, C.J., and KINKEADE, OVARD, MALONEY, CHAPMAN, MORRIS, WHITTINGTON, JAMES, MOSELEY and BRIDGES, JJ., join in the majority opinion.

LAGARDE, J., concurs with concurring opinion.

WRIGHT, J., dissents with dissenting opinion.

LAGARDE, Justice, concurring.

I would hold that the issue of whether the assignment of a note operates, as a matter of law, as an assignment of a separate written general guaranty need not be resolved in this case because the trial court properly found that the assignee of the Note failed to prove an essential element of his claim: that he is the owner and holder of the guaranty.[1]

The existence and ownership of a guaranty may be shown by: the guarantor's admission that he executed the guaranty (*see, e.g., Travelers Ins. Co. v. Bosler*, 906 S.W.2d 635, 645 (Tex.App.—Fort Worth 1995, writ denied)); an affidavit attached to sworn copies of the guaranty (*see, e.g., id.; Hooper v. Mercantile Bank & Trust*, 762 S.W.2d 383, 385 (Tex.App.—San Antonio 1988, no writ) (bank established guaranty by presenting the guaranty and an affidavit of an assistant vice-president of the bank who stated that he had personal knowledge of the attached true and correct copy of the guaranty); *Rhodes v.*

*Interfirst Bank Fort Worth, N.A.*, 719 S.W.2d 263, 265 (Tex.App.—Fort Worth 1986, no writ)); or proof that the party is the named payee, had possession of the guaranty, produced it in court, and offered it into evidence without objection (*see, e.g., Schubiger v. First Newport Realty Investors*, 601 S.W.2d 218, 222 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.)).

In *Gotcher v. Lamar State Bank*, the Beaumont court of appeals reviewed a case in which the record clearly demonstrated that the bank was the owner and holder of the guaranties in question. *See Gotcher v. Lamar State Bank*, 714 S.W.2d 365, 370 (Tex.App.—Beaumont 1986, writ ref'd n.r.e.). The record in *Gotcher* contained the following facts: The bank was named in the notes as the payee; possessed the guaranties and produced them in court; proved up the signatures, execution, and delivery of the guaranties from the guarantor himself; and proffered the guaranties into evidence. *See id.* at 370–71. In various detailed findings of fact and conclusions of law, the trial court found that the guarantor was liable to the bank based on the terms of the guaranties. *See id.* at 371. By necessary inference from the findings of fact and conclusions of law, the court of appeals held that the bank was the holder, owner, and possessor of the guaranties in question. *See id.*

In this case, Ashcraft did *not* prove that he was the owner and holder of the guaranty: Lookadoo did not admit executing this guaranty, Ashcraft did not provide an affidavit attached to sworn copies of the guaranty, Ashcraft is not the named payee in the note, Ashcraft did not have possession of the original guaranty, Ashcraft did not produce the original guaranty in court, and Ashcraft offered an unsworn copy of a guaranty into evidence over Lookadoo's objection. The record reflects the following exchanges:

---

19. *See Wiman*, 877 S.W.2d at 8.

20. *See* Tex.R.App. P. 90(a).

1. To recover on a suit on a guaranty, the assignee of the note must prove 1) the existence and ownership of the guaranty contract, 2) the terms of the underlying contract by the holder, 3) the

occurrence of the conditions upon which liability is based, and 4) the failure or refusal to perform the promise by the guarantor. *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex.App.—Dallas 1994, no writ); *Wiman v. Tomaszewicz*, 877 S.W.2d 1, 8 (Tex.App.—Dallas 1994, no writ).

Questions by Ashcraft's counsel of Ashcraft on direct examination:

Q. Mr. Ashcraft, I'm going to hand you a folder. And with the exception of these being copies in here and with the exception of this file folder not being hole-punched for the Court, this file folder contains plaintiff's exhibit 24, the asset summary sheet; plaintiff's exhibit 17, the substitute trustee's deed; plaintiff's exhibit 23, the lost note affidavit; plaintiff's exhibit 4, the loan agreement; plaintiff's exhibit 5, the promissory note; plaintiff's exhibit 9, modification of promissory note; and some other documents. And can you recall, are—is that file everything that the RTC delivered to you other than the bill of sale which has been marked as plaintiff's exhibit 22 and the purchase and sale agreement, plaintiff's exhibit 21, with respect to your purchase of the Lookadoo loan file?

A. I believe it is, yes.

. . .

Q. When did you become first aware that a copy of the guaranty wasn't provided to you with the documents provided by the RTC?

A. It seems to me you made some mention of it a few days prior to my deposition.

. . .

On cross-examination, Lookadoo's counsel questioning Ashcraft:

Q. Mr. Ashcraft, were you subsequent [sic] informed by [your attorney] that he had obtained a copy of the guaranty?

A. Yes, sir.

Q. When did that—when did he inform you of that, sir?

A. I believe it was on Saturday.

Q. That would be April 15th? *It's within the last two weeks, isn't it?*

A. That's correct.

Q. All right. And now, prior to your receiving notice from [your attorney] regarding him locating a copy of the guaranty, you didn't have the original or a copy of Mr. Lookadoo's guaranty, is that correct?

A. That's correct.

. . .

Questions by Lookadoo's counsel of Lookadoo:

Q. Mr. Lookadoo, you indicated that is a xerox copy of what purports to be a guaranty, Exhibit 7?

A. Yes.

Q. All right. Do you have any reason to believe that the document that's been identified as Exhibit 7 is not authentic?

A. Yes, I do.

Q. What are those reasons, sir?

A. Over the past twenty-five years, it has always been my practice on any note and guaranty that I sign that I initialed every page other than the signature page.

Q. All right. And what was your reason for that practice, Mr. Lookadoo?

A. I have had pages shuffled on me throughout the years and pages substituted or deleted or added.

[Counsel for Lookadoo]: Your Honor, I object to the exhibit on two grounds. Number one, it hasn't been authenticated. Number two, it is not the original document. There is a question as to its authenticity; therefore, a duplicate of the document is not admissible under Rule 10.002[sic] or 10.003[sic].

[Counsel for Ashcraft]: Your Honor, I'll withdraw my request for admission at this time and just go on with the line of questioning before I again re-urge the admission of it.

. . .

[Counsel for Ashcraft]: All right. Your Honor, I move for the admission of plaintiff's exhibit 7 [the copy of the guaranty].

[Counsel for Lookadoo]: Same objection as previously stated, Your Honor: the original is not here. There has been no

explanation of why it is not here. There is a question as to its authenticity.

[Counsel for Ashcraft]: Your Honor, *the question of why [the original guaranty] is not here goes to the possibility of holding the defendant liable on the obligation, not as to its admissibility.* Under the Texas Business and Commerce Code under Section 3.804 talking about lost, destroyed, or stolen instruments, it states that "The owner of an instrument which is lost, whether by destruction, theft, or otherwise, may maintain an action in his own name and recover from any prior party liable thereon *upon due proof of his ownership, and its terms.* ..." So the fact that, currently, we have not explained why we don't have the original guaranty is not a good objection to its admissibility. *It's a ground for potentially denying recovery on this claim unless we can provide explanation.*

[Counsel for Lookadoo]: Your Honor, that's not what the Rules of Evidence provide, with respect to Rule 1002, 1003, and 1004. Additionally, I'd point out to the Court that that particular portion of the business and commerce code applies to negotiable instruments, because the business and commerce code defines "instrument" as negotiable instruments and, as we all know, under Texas law, a guaranty is not a negotiable instrument.

[Counsel for Ashcraft]: Your Honor, again, under the rules of evidence, we do have the best evidence rule. We simply do not have the document. Under the common law, we do not have the original of the document. But upon the best evidence rule we do have, we do have a guaranty agreement which Mr. Lookadoo does not recall anything regarding this transaction. He does—

THE COURT: Well, what about 1003?

[Counsel for Ashcraft]: Again, that's what I was arguing, Your Honor.

THE COURT: Well, there has been a question raised as to the authenticity of the original; whether or not it's valid or not, there's been a question raised.

[Counsel for Ashcraft]: Well, Your Honor, again, I think the testimony—whether there is in fact a true question raised as to its authenticity, again, Mr. Lookadoo's testimony, in essence, is he doesn't recall anything about this transaction. Now, he's coming back saying, "Well, I'm certain that this one wouldn't be." I think that is incredulous [sic]. Simply, he does not recall. We do have a document that bears his signature. He doesn't have any proof that—other than his bald statement that it probably isn't his. But he's already testified he doesn't recall anything regarding this transaction.

THE COURT: And I take it you have no knowledge as to the whereabouts of the original?

[Counsel for Ashcraft]: The RTC most likely has it—that is the only knowledge I have—and they are unable to locate it.

THE COURT: And this original was found where?

[Counsel for Ashcraft]: This copy was found—

THE COURT: I mean, this copy.

[Counsel for Ashcraft]: *This copy was found in the original closing binder of Jackson Walker, and I will inform the Court that I personally went over to Jackson and Walker and inspected their loan closing file which was represented to me to be their loan closing file on the original loan. This was made—this copy was made, as well as the guarantors' individual guaranties of the other guarantors, and this is a true and correct copy of the document which came out of Jackson and Walker's closing loan file.* In fact, I will provide the Court with the exact documents which I did obtain from the loan file of Jackson and Walker. *They were so kind enough to let me take those documents.* That is the document from the Jackson and Walker loan closing file which they retrieved from archives.

[Counsel for Lookadoo]: May I see it, Your Honor?

[Counsel for Ashcraft]: And these other originals which I have been tendering to

the Court, again, those originals were obtained from that same loan closing file of Jackson and Walker. Therefore, the question as to its authenticity, I do not believe that Jackson and Walker—they have no financial interest or no stake in this whatsoever—would do anything to alter the correct loan file which they prepared at the time of closing this file. I don't believe there could be any question raised that they would forge signatures, change terms, or do anything else. They are under a legal obligation not only to their clients; but, under federal law, to maintain copies of documents that are true and correct.

THE COURT: Well, [counsel for Ashcraft], I'll take your representation as an officer of the Court, *the same as I would testimony under oath.*

. . .

[Counsel for Lookadoo]: Your Honor, I think we have a hearsay problem here, with all due respect to [counsel for Ashcraft]. He's testifying as to what someone at Jackson and Walker has told him. THE COURT: Well, even without considering the hearsay statements, it seems to me that it's clear that the circumstances under which this was found indicate liability,[2] and I believe, even without that, I'm convinced that the duplicates are admissible. I'll overrule the objections and admit Exhibit 7 [the guaranty].

Ashcraft did not receive an original of the guaranty in the RTC file. Ashcraft produced a copy of the guaranty two weeks before trial, long after filing his pleadings. Ashcraft did not offer testimony from Lookadoo, Metropolitan[3], the RTC[4], Jackson and Walker[5], or Ashcraft showing that Ashcraft was the owner and holder of the guaranty. Ashcraft's attorney contended that *he* went to Jackson and Walker to obtain the loan file, including a copy of the guaranty. Ashcraft's

attorney, however, is an interested witness. Lookadoo objected to the admission of the evidence based on lack of proof of authenticity. The judge was within his discretion to admit the guaranty into evidence; however, the judge, as the fact finder, was also free to weigh the testimony concerning the procurement of the copy on the issue of ownership of the guaranty.

In the findings of fact and conclusions of law, the trial court concluded that Ashcraft failed to prove an essential element of his claim: that he is the owner and holder of the Lookadoo guaranty. Ashcraft does not challenge the evidence supporting that finding by the trial court. Even if he had, that finding must stand if there is any probative evidence supporting it. *Henry S. Miller Residential Service v. Arthur,* 671 S.W.2d 670, 671 (Tex. App.—Dallas 1984, no writ). Concluding there is evidence to support the trial court's fact finding that Ashcraft failed to prove that he is the owner and holder of the Lookadoo guaranty, I would affirm the judgment of the trial court.

WRIGHT, Justice, dissenting.

Because I would conclude in accordance with the Restatement of Suretyship and Guaranty that a guaranty, as a secondary obligation, follows the underlying note that it secures, I would conclude that Ashcraft by proving he was the owner and holder of the note, in the absence of evidence of an agreement to the contrary, also proved he was the owner and holder of the guaranty. Accordingly, I respectfully dissent from the majority opinion. Further, I would reverse the trial court's judgment and render judgment in favor of Ashcraft.

The majority first concludes that according to the contract governing this transaction, the purchase and sale agreement, the RTC did not assign the guaranty to Ashcraft. The majority then concludes that, because Ash-

---

**2.** In light of the trial court's judgment, the use of the word "liability" appears to be a typographical error; we, therefore, read the record to say that the trial court found the "circumstances under which this was found indicate *reliability.*"

**3.** The original holder and payee of the note.

**4.** The first assignee of the note.

**5.** Attorneys for Metropolitan in the loan transaction and later for the RTC as assignee of this note.

craft did not prove the RTC held the guaranty, Ashcraft failed to prove the RTC was capable of assigning it to him. As a result, the majority concludes Ashcraft failed to prove that he was the owner and holder of the guaranty. I cannot agree with either the majority's analysis or its holding that Ashcraft failed to prove he was the owner and holder of the guaranty.

Whether the transfer of the principal obligation operates as an assignment of the guaranty is an issue of first impression in Texas. Although, as the majority notes, no Texas court has addressed Ashcraft's argument about automatic assignment of the guaranty, the Restatement of the Law of Suretyship and Guaranty and the only jurisdictions writing on this issue apply to guaranties the general rule of contract law that the transfer of a note automatically carries with it the assignment of all collateral used to secure the note. For the reasons that follow, I would agree with the other jurisdictions and follow the Restatement of the Law of Suretyship and Guaranty. I disagree with the majority that we need not decide whether Texas law provides for automatic assignment of the guaranty with the primary obligation. As I view the necessary analysis in this case, we must first decide whether the assignment of the underlying obligation operates to assign any secondary obligation supporting it. Next, we must determine whether there are circumstances or agreements prohibiting assignment of the secondary obligation.

The majority concludes that Ashcraft failed to show that the RTC owned the guaranty and, thus, we need not determine whether Texas, like the other jurisdictions and the Restatement, follows the general principle of automatic assignment under contract law. I disagree. Initially, we must determine whether Texas law provides for automatic assignment of the guaranty with the primary obligation; because, if automatic assignment is the law in Texas, when Ashcraft proved the note was assigned to the RTC, in the absence of any agreement to the contrary, he proved the RTC was the holder and owner of any secondary obligations to the note.

If, as the majority states, the guaranty admitted into evidence at trial "at best shows the guaranty's terms as of 1984," in the absence of any evidence to the contrary, I would conclude the terms of the guaranty as executed in 1984 remain the terms of the guaranty. When Ashcraft introduced the guaranty into evidence, he proved the terms of the guaranty.[1] It then became Lookadoo's burden to controvert that evidence. See Metrocon Const. Co. v. Gregory Const. Co., 663 S.W.2d 460, 463 (Tex.App.—Dallas 1983, writ ref'd n.r.e.) (once the terms of the contract have been established, party seeking to avoid effect of the contract due to modification bears the burden of proof). To hold otherwise would be to place a negative burden upon Ashcraft. See id. at 465. The majority requires Ashcraft to prove that the contract has not been modified. I would conclude that Ashcraft introduced evidence showing the terms of the guaranty when it was executed, and if Lookadoo seeks to avoid the terms of the guaranty, he should bear the burden of proving that the terms have been extinguished or modified. See id. Accordingly, I disagree with the majority's conclusion that because Ashcraft presented no evidence "confirming that Lookadoo's guaranty was still in effect and owned by the RTC," the circumstances of this case prevent this Court from determining whether the transfer of the underlying note automatically assigned the guaranty.

Consequently, I would begin the analysis of this case with the proposition that guaranty agreements are governed by general principles of contract law. See Coker v. Coker, 650 S.W.2d 391, 393 (Tex.1983); Marshall v. Ford Motor Co., 878 S.W.2d 629, 631 (Tex. App.—Dallas 1994, no writ). A guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform. Dann v. Team Bank, 788 S.W.2d 182, 183 (Tex.App.—Dallas 1990, no writ). The guaranty is a contract distinct from the pri-

---

1. The trial court admitted the guaranty into evidence. Lookadoo does not challenge the admission of the guaranty on appeal. Thus, I do not discuss the authenticity of the guaranty.

mary obligation. *Sunbelt Sav. v. Barr*, 824 S.W.2d 600, 602 (Tex.App.—Dallas 1991), *rev'd on other grounds*, 837 S.W.2d 627 (Tex. 1992). Nonetheless, the guaranty is a secondary obligation intended to secure the payment of the primary debt. *See Dann*, 788 S.W.2d at 183.

In Texas, guaranty agreements are classified as general or special. *See Cobb v. Texas Distrib., Inc.*, 524 S.W.2d 342, 344 (Tex.Civ. App.—Dallas 1975, no writ). A general guaranty operates in favor of any person who may accept it. A special guaranty, on the other hand, is available only to the particular person to whom it is addressed. *See id.* General guaranty contract rights are assignable unless the provisions of the promise or agreement of guaranty manifest the intention that the right or rights created shall not be assigned. *See Thompson v. North Tex. Nat'l Bank*, 37 S.W.2d 735, 738–39 (Tex. Comm'n App.1931, holding approved); *Lexington Ins. Co. v. Gray*, 775 S.W.2d 679, 682 (Tex.App.— Austin 1989, writ denied), *disapproved on other grounds by Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793 (Tex.1992). Special guaranties, on the other hand, are usually not assignable. *See FinanceAmerica Private Brands, Inc. v. Hall*, 380 A.2d 1377, 1380 (Del.Super.1977). Both Lookadoo and Ashcraft agree that the guaranty is a general guaranty and is assignable; they disagree about whether a separate express assignment is necessary to assign the guaranty.

Texas law follows the general contract rule that the transfer of a note automatically carries with it the assignment of all collateral used to secure payment of the note. *See Gilbreath v. White*, 903 S.W.2d 851, 854 (Tex. App.—Texarkana 1995, no writ); *Lawson v. Gibbs*, 591 S.W.2d 292, 294 (Tex.Civ.App.— Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Pridgen v. Denson*, 220 S.W.2d 194, 196 (Tex. Civ.App.—Austin 1949, writ dism'd); *see also Jackson v. Thweatt*, 883 S.W.2d 171, 176 (Tex.) (unless a contrary intention is manifest or inferable, an assignment ordinarily carries with it all rights, remedies, and benefits which are incidental to the thing assigned, except those which are personal to the assignor and for his benefit only), *cert. denied,*

513 U.S. 872, 115 S.Ct. 196, 130 L.Ed.2d 127 (1994).

The Restatement of the Law of Suretyship and Guaranty applies this general principle to guaranty agreements, reasoning that the secondary obligation follows the underlying obligation because the secondary obligation, like a security interest, has value only as an adjunct to the underlying obligation. RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 13 cmt. f (1996). It can usually be assumed that a person assigning an underlying obligation intends to also assign any secondary obligation supporting it. *Id.* Thus, unless there is an agreement to the contrary or assignment is otherwise prohibited, assignment of the underlying obligation also assigns the secondary obligation. *Id.* Assignment is otherwise prohibited when: (a) the substitution of a right of the assignee for the right of the obligee would materially change the duty of the secondary obligor or materially increase the burden or risk imposed on it by its contract; (b) the assignment is forbidden by statute or is otherwise ineffective as a matter of public policy; or (c) the assignment is validly precluded by contract. *Id.* § 13(1).

Likewise, the only jurisdictions I have found writing on this issue apply the rule that assignment of the underlying note automatically assigns the guaranty. *See Ampex Credit Corp. v. Bateman*, 554 F.2d 750, 753 (5th Cir.1977) (transfer of the principal obligation is generally held to operate as an assignment of the guaranty); *Thorpe v. Story*, 10 Cal.2d 104, 73 P.2d 1194, 1202 (1937) (assignment of the debt operates as assignment of the guaranty, because even though the guaranty is a separate instrument it is incidental to the debt); *New Holland, Inc. v. Trunk*, 579 So.2d 215, 218 (Fla.Dist.Ct.App. 1991) (assignment of a principal obligation also operates as an assignment of the guaranty of the obligation); *Rizzi v. Service Dev. Corp.*, 354 So.2d 898, 899 (Fla.Dist.Ct.App. 1978) (transfer of a lease was transfer of the original obligation and operated as an assignment of the guaranty); *Hazel v. Tharpe & Brooks, Inc.*, 159 Ga.App. 415, 283 S.E.2d 653, 654 (1981) (transfer of the principal obligation also operated as an assignment of the

guaranty); *Sinclair Mktg., Inc. v. Siepert,* 107 Idaho 1000, 695 P.2d 385, 388 (1985) (there is no question that the assignment of a principal obligation also operates as an assignment of the guaranty of the obligation); *Siedentopf v. Braune,* 273 A.D. 791, 75 N.Y.S.2d 326, 326 (N.Y.App.Div.1947) (surrender of the security to the bank in lieu of foreclosure carried with it an assignment of the guaranty).

Nevertheless, Lookadoo relies on *Havens v. Ayers,* 886 S.W.2d 506 (Tex.App.—Houston [1st Dist.] 1994, no writ), and its interpretation of Tennessee law to support his position that a separate assignment of the guaranty is necessary. In *Havens,* the court relied on Tennessee law, which requires an express provision allowing for assignment of the guaranty, in concluding that assignment of the underlying note does not operate to assign the guaranty. *Id.* at 511 (citing *Memphis Sheraton Corp. v. Kirkley,* 640 F.2d 14 (6th Cir.1981), and *Turley v. Hodge,* 22 Tenn. 73, 74 (1842)). These cases, however, addressed the issue of whether the guaranties were *assignable* under Tennessee law, not whether the guaranties were validly *assigned.* Further, the cases appear to involve special guaranties, which are generally not assignable unless the terms of the guaranty expressly permit assignment or other special circumstances exist. *See Financeamerica,* 380 A.2d at 1380.

Lookadoo does not dispute that his guaranty is a general guaranty and is assignable; instead, he argues that Ashcraft must have a separate express assignment to show ownership of the guaranty. Because the issue before this Court is whether the guaranty was automatically assigned with the note and not whether it was assignable, I do not find these cases persuasive. I am, however, persuaded by the reasoning in the Restatement. Therefore, I would conclude that the assignment of a note operates to assign the guaranty unless the terms of the guaranty prohibit assignment or there is an agreement to the contrary, or other circumstances exist to prohibit assignment. To decide this issue, I turn to the guaranty to determine if there is language precluding automatic assignment of the guaranty.

The guaranty contains the following language regarding assignment:

10. This Guaranty is for the benefit of Noteholder, its successors and assigns, and in the event of an assignment by Noteholder (or its successors or assigns) of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the indebtedness so assigned, may be transferred with such indebtedness.

Lookadoo argues this provision requires a separate assignment of the guaranty, contending the use of the word "may" creates an inference that the rights under the guaranty are not automatically assigned if the note is transferred. I disagree. The provision addresses the assignability of the guaranty, not the requirements of a valid assignment. I am aware that the terms of the guaranty must be strictly followed, and that any ambiguity must be construed in favor of the guarantor. *See Coker,* 650 S.W.2d at 394 n. 1. However, the agreement may not be extended beyond its precise terms by construction or by implication. *Id.* I would conclude that to construe the above provision to infer the requirement of a separate express assignment of the guaranty would be to extend the agreement beyond its precise terms. The guaranty clearly and unambiguously allows for assignment, and I would conclude the terms of the guaranty do not preclude automatic assignment of the guaranty with the note.

Next, I would determine whether the RTC intended to transfer the guaranty to Ashcraft when it transferred the note. The majority agrees with Lookadoo's contention that the Purchase and Sale Agreement indicates the RTC did not intend to transfer the guaranty along with the note. I disagree. I am of the opinion that the RTC did, in fact, intend to transfer the guaranty with the note in the absence of an agreement to the contrary. *See* RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 13 cmt. f (1996).

Lookadoo first relies on the fact that the guaranty is not listed in the Final Asset Schedule attached to the Bill of Sale. However, the Purchase and Sale Agreement defines "asset" as any charge off, deficiency or judg-

ment described on the Asset Schedule or the Final Asset Schedule. "Collateral," on the other hand, is defined as the real or personal property, guaranty, pledge or other property, if any, securing the note. Thus, under the express terms of the Purchase and Sale Agreement, which the majority concludes is the controlling contract, the guaranty is defined as collateral and not as an asset. As such, the guaranty would not be listed on the Final Asset Schedule as a result of its very definition in the Purchase and Sale Agreement. Thus, I would conclude that the RTC's failure to include the guaranty on the Final Asset Schedule is irrelevant to a determination of the RTC's intent to transfer the guaranty along with the note.

Second, Lookadoo and the majority rely on section 3.1 of the Purchase and Sale Agreement, which provides:

> *Buyer's Preparation of Assignments.* Upon execution of this Agreement, it shall be the Buyer's responsibility to prepare the assignments of judgment for any and all judgments sold hereunder.... In the event any other assignments of Seller's interest in any of the Assets and any collateral securing the Assets *is required,* it shall be Buyer's responsibility to prepare and submit the form of the assignment it desires to use to the Seller ... (emphasis added).

Lookadoo contends this "clearly addresses the need for separate assignments." Likewise, the majority concludes section 3.1 "shifted responsibility to Ashcraft to follow up on the guaranty issue and obtain a written assignment." I disagree. The issue to be determined is whether the RTC intended to assign the guaranty with the note. Nothing in this provision indicates that the RTC did not intend to transfer the guaranty. The provision simply provides that if an assignment *is required* for any collateral, it is Ashcraft's responsibility to prepare its own assignment language, paperwork, and format, which *is not required* in the case of the automatic assignment of a previously executed general guaranty agreement. After reviewing the Purchase and Sale Agreement, I would conclude it does not evidence an agreement between the RTC and Ashcraft that the

RTC would retain the guaranty when it transferred the note to Ashcraft. In the absence of an agreement to the contrary, I would conclude, like the Restatement and the other jurisdictions that have addressed this issue, that the RTC intended to transfer the guaranty with the note.

Because the terms of the guaranty do not prohibit assignment and there was no evidence of an agreement to the contrary, I would, also, conclude the assignment of the note operated to assign the guaranty. As a result, I would conclude that Ashcraft, not only proved ownership of the note, but also proved ownership of the general guaranty. To recover under the guaranty, Ashcraft must show: (1) the existence and ownership of the guaranty contract; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor. *See Marshall,* 878 S.W.2d at 631. Based on my conclusions that: (1) absent evidence to the contrary, the guaranty admitted into evidence at trial shows the terms of the guaranty; (2) the transfer of the note operated to transfer the guaranty; (3) the terms of the guaranty did not preclude automatic assignment; and (4) the RTC intended to transfer the guaranty with the note, I would conclude that Ashcraft is entitled to recover under the guaranty.

Accordingly, I would reverse the trial court's take-nothing judgment entered in favor of Lookadoo and render judgment in favor of Ashcraft.